Good morning, and may it please the court. My name is Jenna Cobb, and I represent Appellant Dennis T. Butler. I would like to reserve two minutes for rebuttal. The government infected Mr. Butler's trial with false and misleading testimony from an FBI agent qualified as an expert. This false and misleading testimony was intentionally designed to lead the jury to believe that three hairs recovered from the decedent's body belonged to Mr. Butler, and to resolve the only contested issue at trial, the identity of the killer. This hair evidence was extremely powerful for the government's case. The forensic hair testimony tied Mr. Butler to crime, in a case in which the bulk of the government's evidence came from two drug-addicted witnesses who were mixed up in crimes, one of whom had directly lied to the jury to cover up his own criminal activity. The government tried to corroborate their testimony with details from the crime scene, but the jury heard that at least four neighbors had walked through the crime scene before the police even arrived, and of course they had talked about what they'd seen with others. The jury also heard that the police, who applied pressure to the two alleged confession witnesses, had been through the crime scene, and even heard evidence that one of them may have had more of an involvement in the murder than he'd let on. In contrast, the forensic hair testimony stood on its own, scientifically linking Mr. Butler to the murder. In a criminal trial in which false forensic evidence was developed by the government, presented during the expert's direct examination, highlighted again on redirect examination, argued explicitly during closing arguments, and reemphasized again on rebuttal, there is, at the very least, a reasonable possibility or likelihood that it may have affected the judgment of the jury. I'm not saying you necessarily have to have this, but I'm going to ask the question anyway, which is, was there a defense case put on at trial that it was somebody other than Butler? There was certainly, the jury could make those inferences. It was, the defense case was that Mr. Butler was obviously not the person who committed the crime. They didn't... Right, I'm sorry, I should have been more careful. They obviously hoped and thought it was somebody other than Butler, but was there a theory put forward as to how it could have been somebody other than Butler? Like say, for example, that either Hill or Robinson was involved. Was that ever put to the jury? The inference was argued to the jury. They didn't specifically identify one person who it could have been, but several questions were raised to identify, to make it clear that other people could have committed this crime. What the hair evidence did then was foreclose that possibility that it was someone other than Mr. Butler. You mentioned, Ms. Cobb, that you referred to the government's hair evidence as intentionally designed. Does it matter whether it was knowingly false or just now conceitedly false? It doesn't matter for the sake of the falsity element of NAPU, but what the intentionality shows is the prosecutor's mindset and the prosecutor's intent to use this evidence to identify Mr. Butler as the person who committed the crime. He was an expert witness who had testified 90 times, so there was no question as to what his testimony was going to be. So the fact that it was known and intentionally used just goes to show how the prosecutor thought of the evidence and how the prosecutor was using it and arguing it for the jury to rely upon in order to identify Mr. Butler. Could we go through it in some more detail? Because I have to say my reaction to it is much of it seems unobjectionable and the characterization of knowingly false as opposed to there's maybe one garbled exchange where there's a degree of overstatement. That's my reaction to it on reading it. So the first exchange on direct, he says the hairs could have come from the head of Mr. Butler, the head of the defendant, and he says this is not a positive identification. I don't have enough information to do that. That seems like a measured and appropriate statement of what the science does or doesn't allow. Do you agree with that? Well, in one breath he said it's not a positive identification, which was the traditional kind of limiting language that all of the agents would use. However, in the other breath he also told the jury that it would be very seldom that two hairs could come from the head of Mr. Butler. So let's just take them one at a time. That seems to me perfectly fair and consistent with the government's view and with the Innocence Project's view that this is legitimate science to identify the defendant as a potential person as long as you don't overstate the reliability of the science. That statement alone, yes. Okay. So then we come to the next one, which is at the end of the direct in which he says it's only four or five times. He's previously said he's looked at 10,000 samples, right? And you take this as effectively saying that to a near certainty this hair can come from the head of Mr. Butler, the hair that they found can be attributed to Butler. Exactly. But that's not what he said. What he said is that to a near certainty the hair of the victim and the hair of the defendant can be shown to be different, right? It's not that the evidentiary hair came from Butler. It's that he knows to a near certainty it did not come from the victim. That's what he says. Well, he says, his point about it being very seldom that he cannot tell hair apart and referring to his 10,000 examinations and saying there were only four times when there were hairs that he couldn't distinguish when they were nearly alike, the point of that was to how rare it would be that he would have two hairs and not be able to tell them apart even if they were nearly alike. When the hair of the suspect and the hair of the victim are so nearly alike, I'm on essay 353. So he's basically, he's eliminating the possibility that the evidentiary hair was the victim's. And that's not really indisputable. Well, in this case he doesn't just eliminate the possibility that the evidentiary hair was the victim's. He also says that the evidentiary hair was identical to Mr. Butler's hair in that. Okay, but now you're jumping ahead to the redirects, which is where I think there's overstatement. But this one doesn't bother me because it just seems, he just seems to be saying the evidentiary hair is not the victim's. And then the Can I ask you one question about this exchange, which is that the question that was put was how likely or unlikely is it for two different hairs to be microscopically alike, yet come from different people? And the answer that was given is the one that Judge Cassis is asking. The question, it's not entirely clear that the answer is responsive to the question that was being asked, although the answer I think has, I'm putting it to you, but I Fair point. And let me just put my cards on the table. That strikes me as an instance where there's a little bit of garbling and arguable mismatch between the question and the answer, the kind of thing that happens all the time when people are speaking under stress. It reads more like a little bit of garbling than like a deliberate conspiracy to mislead the jury. And then when you take the answer on its own terms, it's just eliminating the match to the victim. And it, well one, the question too is the impression that the jury would have been left with from the testimony. So even if there was garbling, the question is going to be what message the jury take from that testimony. And the clear message, because it was asked several times and elicited, and I don't want to jump ahead, but because it was asked several times and elicited and argued, the point that you were trying to make, which was that it would be so rare and that you could rely on it. So let's move ahead. So that's direct. Then we come to cross. And the defense counsel does a very effective job underscoring the limits of the science, right? Your testimony is you can't say positively the hair is from Mr. Butler. It could have originated from someone else's head. I have no statistics to illustrate how likely it is that this was Butler's hair, right? Right. It's a very good exchange for the defense. And it's right on the heels of this statement about four or five times. Well what he says is that it could have originated from someone else if all of the characteristics were the same. There's no reason to think that the jury would think that all the characteristics would be the same, particularly when they emphasize that, look, these were not only out of 10,000 examinations, where had it even come close? Right. But that, go ahead. If all the characteristics are the same, and in context this means there are the 16 traits or however many traits that they're looking for and there's a match on each of them, and then the question is how likely is that as a positive ID of the defendant, and the discussion elicited by an effective cross is I have no statistics to illustrate the likelihood of that. He does say he doesn't have statistics to illustrate the likelihood. So it seems to me you're in quite good shape until we get to redirect, which is what you want to jump ahead to, because I think it's the best statement for your case here, where at, I'm now on 357, this strikes me as the one and perhaps only area where there's overstatement where he says the question is are these similar, and he says these hairs are the same. They're alike in all identifiable microscopic characteristics, which seems close to saying these hairs, I can tell you as an expert, these hairs belong to Butler. Exactly, and that's exactly how the prosecutor used it, how it was understood by the jury, how the prosecutor argued it. But it's five lines of transcript on redirect after the expert in his principal testimony has laid out all the limits of the science and that's been confirmed by an effective cross, and then right after this comes out, it's confirmed again on an effective recross where defense counsel says we have no idea how many people have all of these same characteristics. So it seems like there's an overstatement, no doubt, but in the grand scheme of this exchange, doesn't seem like it's a centerpiece. It is a centerpiece in the sense that this is exactly the reason why the government put this evidence on, it was for that 4 in 10,000 statistic, for the idea that it's very seldom that hairs can't be told apart. And so that's how the prosecutor used it in trial, that's what he argued to the jury, repeatedly. And the fact that it takes up relatively little space in the context of the entire trial, I think just speaks to the power of the evidence. There wasn't a lot that had to be said about this. You've said that there's an identical, or a hair that's like in all microscopic characteristics, and it would be very seldom that there would be a false match. And so similar to if there was a DNA match put forth, that's extremely powerful regardless how many lines of the transcript are spent discussing it. Ms. Powell, can you help us, you know, one of the things that we have here is that the Department of Justice has conceded that the FBI laboratory examiners exceeded the limits of science by overstating the conclusions that may appropriately be drawn from a positive association between evidence you heard in a known sample. And the Department has stated that the witness stated or implied that the hair could be associated with a specific individual to the exclusion of all others, and that the witness assigned to the positive association a statistical weight or probability that could lead the jury to believe that valid statistical weight can be assigned. So all of those things, on record as we have it, are conceded by the government. On the other hand, the government does not take a position about materiality. And I just wonder if you can help us in light of the line of questioning that we've just been through. How do we distinguish, how to treat those concessions from the question of materiality? Well, I think for the purpose of the concessions is just to establish that this is false evidence, and we're not arguing whether it's false or not. But it seems like some of the back and forth was arguing about that, and that's where I'm trying to get your position. Sure, and our position, my position first is that the government should be bound by its concession that it was false and misleading. They made that concession with good reason, because it is in fact false and misleading. And then beyond that, we then would go to the materiality assessment, under which reversal is required, unless the court can be convinced that this powerful false forensic evidence was harmless beyond a reasonable doubt. That it didn't at all affect the jury's verdict. In this case, where this false forensic testimony from an expert went directly to the only contested issue at trial, there's no way that the court can be satisfied that this was harmless error. Okay, thank you. We'll hear from the government. Okay, please, the court. Patricia Heffernan on behalf of the United States. Just starting to clear one thing up. The defense theory was an attack on the credibility of the witnesses, but there was no alternate defense theory of the case. In fact, on July, in the closing arguments on July 14th at page 763, the defense counsel in fact said, this isn't going to be, we're not going to try to be Perry Mason and bring in the person who did it. So there was no alternate theory for who committed this crime. Here, the... But they did argue there was reasonable doubt as to whether Butler did it, obviously. Yes, yes, the defense counsel walked through the testimony of every single witness, and attacked the credibility of the two confession witnesses, and then with respect to the remainder of the evidence, basically said, this isn't direct evidence, nobody tied, no one's saying, tying this defendant specifically, this piece of evidence doesn't say this defendant did it. So basically, it was a one-by-one attack on the circumstantial evidence. So what's the, what happened with the so-called two boys, who the defendant was allegedly selling drugs to at the time when they ran across the victim? Well, the defendant told Mr. Hill that the boys ran out of the apartment. And were they never, they were never witnesses, they were never identified? They were not witnesses at trial. And there were several explanations for how it could be that they would have escaped unnoticed by the water workers. But no, they were not witnesses at trial. The, we agree that this statement, Your Honor, that you pointed out, is overstated, the statistics. But I think the court, of course, needs to look at the context of that testimony within the context of the expert himself, who made quite clear that he was not identifying the defendant as the perpetrator, that he could not say that. And then within the broader scheme of the overwhelming evidence, circumstantial evidence coupled with the confession evidence, confessions to two witnesses, those confessions were corroborated by the physical evidence. We also have to look at it in the context of the way the prosecutor used it, right? And so, and in the prosecutor's closing argument, the prosecutor said, I said, and this is a 496, a supplemental appendix. I said, how often, Agent Shulberg, does it happen? You can't be positive, yes, but how often does it happen that two people's hair, two different people, are so similar and so alike that you'd be unable to tell? Out of 10,000 examinations, he said he recalls it happening approximately four times.  Given the potential mismatch between the question and the answer and the different ways in which it came out, that's how the government encapsulated the significance of that testimony. I don't dispute that. That's correct. I would point out that this was, that's several lines within a 24-page closing argument, and it is not, was not what the government highlighted. The government described certain evidence as pivotal. This is where the door opens or cracks the case open. I can't remember what exactly the prosecutor said, but the evidence that the prosecutor focused on, starting with the confessions, I mean, that was a big chunk of what the government highlighted as important, and how those confessions were highlighted, were corroborated. And what the government characterized as pivotal was the belt. These confessional witnesses knew both the belt had been used and that it had broken in the process of the strangling, and that belt was not on the, not with the decedent. It was in the kitchen in a drawer where these civilian witnesses had not been. And the prosecutor highlighted the paint. And the prosecutor highlighted the fact that Ellen Johnson couldn't have known several of these things because she did not go anywhere past the bathroom. The confessional witnesses also knew that a stocking had been used. Again, what he really highlighted were the details that only the killer could have known, and that, which was what made these confessional witnesses. The killer or the police, right? The killer or the police. The police officers who had been on the scene. Well, the police wouldn't have known of the FBI analysis that the belt had been torn rather than cut. That's right. The police made observations. The medical examiner made observations. The police, of course, denied having colluded to corrupt this trial, and there was no evidence of that. And, of course, I would point out that that theory was, although there was no alternate defense theory of the case argued at trial by the defense, they did throw out this notion that other people were, you know, this information could have come from other people, and the jury rejected that. Right, so you can know details of the crime scene that are consistent with the statements by Hill and Robinson and still not necessarily conclude that knowledge of the details of the crime scene implicate Butler. Because it may, it could have been somebody else that did exactly all those things with the belt, with the sock in the throat. That's correct, but we also, but that's corroborated by all of the other evidence in the case. These keys are found on the contiguous roof of Butler's home. Butler, he's got the motive. There was no disputing that he was a drug dealer, and this is a drug deal that has been interrupted. He's got the opportunity. He's the person who's on the scene. So, can I ask you this question? So, there's no doubt that there's evidence that implicates Butler. I mean, that's, I think, I doubt that our colleagues on the other side would disagree with that. The question is, where are we in terms of materiality, given the standard? And the, what you say in your brief, quoting Lafayette, is that the standard of materiality is easier for the defendant to meet than the reasonable probability requirement of Brady, and is instead equivalent to the harmless error standard in Chapman. And so, that means that it is the most difficult standard of materiality that the government has, correct? Correct. Okay. But we still do not think that Appellant has met his burden here of demonstrating a reasonable likelihood of an effect on the verdict, given there's a mountain of circumstantial evidence. And, boy, this guy's, he's either the most unlucky guy on the planet, or he's the killer. Every, every, all the circumstantial evidence points to the, points to the Appellant, and there's all sorts of evidence that corroborates the veracity of the confession witnesses. So, I'm a little concerned about the opinion that we wrote on direct appeal, which, the direct appeal issue, as you'll recall, was, should there have been an expert evaluation of the credibility of these two witnesses, Hill and Robinson, right, who were admittedly drug addicts. And our court says, yeah, we know there's serious concern about the addict-turned-informer, who may have a special and very powerful motive to fabricate a case for his own benefit, but we say, again and again, here, there's extrinsic corroboration, extrinsic corroboration, extrinsic corroboration. When I read that, I think the panel at that time is thinking of hair evidence, which the prosecution emphasized. These hairs are the same in every microscopic characteristic, every one. You heard the 16 possible combinations, lack thereof, et cetera, every one matched. To me, that is arguably, in the juror's mind, the strongest corroborating evidence. So it's a little, how do we say harmless error, given the, on the one hand, the bulwark of the Hill and Robinson testimony, and the other hand, the bulwark of the hair? Well, I think the question is, how does the court, can the court say that the defendant has shown a reasonable likelihood of an effect on the verdict? Right. And there's so much evidence here. It's true. We're not disputing that these were drug users. People are convicted in courthouses around the country based on the testimony of drug users every single day. And so that can't be the answer right there. But these, they were corroborated both by the physical evidence. I'm not disputing that the hair evidence was one piece of evidence that the government used and suggested corroborate, is corroborative evidence. That's a fact. But we had other forensic evidence. We've got the paint. We've got paint on the decedent's, the inside of the decedent's coat, the defendant's pants, and the Pepsi bottle that was used in the course of the murder. So the question was a lot of that. And you're right. I mean, we're trying to unpack the extent to which a particular piece of evidence affected the overall picture. And part of that is informed by the extent to which the other pieces of evidence could have been called into question. And with the paint, which is obviously probative evidence that supports the government, the response was made that, well, the paint came from a few days earlier. And yeah, Butler and the victim were together a few days earlier when the paint was fresh. And so that's possible. And of course it's possible, too, that the paint was... I think that's a much weaker argument because neither of them were painting on Saturday. And it just so happens that the paint is on the inside of his coat with the Pepsi bottle that's used in the murder that also has paint on it. And... I may be wrong, but I thought the painting was actually happening on the earlier time. And therefore it was more plausible that the new fresh wet paint... You're right. No, the paint was happening on Saturday. But these two people weren't painting. No. The defendant wasn't painting. And Mr. Mears wasn't painting. At the same time. Right.  So... And it just so happens that there is that Pepsi bottle with paint on it on top of Mr. Mears's coat. And the splatter on the deceitful's pants. And so... But the court's focus ought to be the totality of the evidence. Sure. Should we take into account the way that the defense perceived the case? Because what the defense counsel said at supplemental pedic 768 is about the hair testimony. And next we had Agent Shulberg, another expert, a hair expert, that he dealt with human hairs. He told you that there are a series of characteristics about these hairs. And you heard him testify that he cannot be sure, that he cannot say to you categorically. And then now this is it. If this evidence failed, then the government has failed. That's right. So... He perceived that evidence as wobbly and tried to convince the jury, don't look over here at all this other evidence. He also perceived it as really, really significant. Because he says if this failed, the government has failed. I think he perceived it as significant had it identified the defendant as the killer. And his point was, no it doesn't. Right, but then that, but the prosecutor's closing argument does use it to identify. I guess, I understand what you're saying, which is that the defense might have been successful in trying to impugn the hair testimony. But what one can also glean from that statement is the defense thought that the hair testimony was particularly significant. I think at the end of the day, it's not fair to characterize the hair evidence as argued by the prosecutor is this overwhelming, significant piece of evidence. What the prosecutor found significant and pivotal, he describes as the belt. And the fact that Ellen Johnson doesn't enter the kitchen, she couldn't have known about the belt. She couldn't have known about the gag, the stocking used as a gag. And the statements by... But he also, your honor, and I see I'm out of time. But he also pointed to the other evidence that corroborated the veracity of the confession witnesses. You had Junior Dean, who has a defendant on the scene at the time of the murder. He's got a defendant coming back home around 2.30. The defendant's girlfriend can't put the defendant in home, but she does say that he left to go to Hill's house at 3.30. And Hill says the defendant came over around 3.30, where he made these confessions. You've got Junior, who then has the defendant coming back around 5 o'clock, consistent with the confession witnesses saying that's when they separated ways. You've got Mary Dean saying that Hill is a very good friend of the defendant's. There's no reason, on a day of the murder, there is no reason for Hill and Robinson to falsely frame their very good friend, the defendant. In fact, when Hill went in to talk to the police initially, he didn't want to tell them what he knew. He was trying to protect the defendant. And there was no theory for why they would do this on that day. And he was with the defendant after the murder, hanging out with his family. Again, establishing the close relationship that these folks had. And so the prosecutor, if you look at the prosecutor's closing argument in its totality, it's very clear that the hair of evidence is not driving matters. That's not how the government argued the case. It's complicated because these post hoc materiality inquiries are always difficult. But it's complicated because what the prosecutor does say over and over and over is look at everything together. It's not just one thing. Look at all the stuff together. And one of the things that is among the things that you're supposed to look at together is the hair. It's one of them. There's definitely a lot of other things. You're absolutely right about that. And we don't disagree. It came in because it was relevant. But that's not the standard. The test isn't, is this evidence relevant? Did it make it a little bit easier? This evidence has to have some heft and some weight for the court to find a reasonable likelihood that it affected the jury. And we don't think in the totality. It has to be beyond a reasonable doubt that it didn't, right? That's the standard that you bought into with Chapman. I take it that's true. It only has to be one juror? Well, what we agreed with was the notion of the certainty that the court needs to find. But we don't agree that the test that ought to be applied, we don't agree that the court should rewrite the NAPIU standard. The defendant should be required in this case to meet his burden of showing a reasonable likelihood that this evidence... Right. And that standard is equivalent to... Yes, yes. But that's the defendant's burden. Yes, yes. The burden kicks into play if you're an equipoise. Yes. But in terms of the standard, the standard is equivalent to the... Yes. And we think with a mountain of overwhelming evidence, all of which points to appellant. There's no alternate theory. And at this point, you just referred to the mountain of overwhelming evidence. At this point, were we to find that the error is not harmless, then what happens as a practical matter? If this court were to find the defendant met his burden of showing materiality, in this case, we have not made a harmless error argument. We haven't... Pardon? So I want to be clear that NAPIU requires... Right, but your theory is harmlessness is subsumed in materiality. In this case, yes, we're not... Yes, we're not... We are not arguing that if the court finds that all of the elements of a NAPIU violation have been met, that it would go on to assess for harmlessness. There's not an extra harmless error? No, there is not. We're not making that argument here. There's the materiality part of NAPIU. I thought the question was what would happen as a practical matter with this case if the court were to conclude that the evidence was material? Then the court would reverse. And? And what would happen with this case? Retrial? Retrial? I mean, it's 48 years old, I think. Retrial is not something that we've discussed. So I don't have anything to offer. I have no idea whether these witnesses are even alive at this point. And this was an individual who was sentenced to 20 years? 20 years to life. And then I think 5 to 15 on the robbery. Concurrent. I think concurrent. I think they were concurrent, yeah. Because it was felon... So the concurrent, so it's just... Okay. It's not for us. Can I just... I'm just puzzling through the materiality part of it and how we're supposed to conceptualize it. If we... Would we look at it from the perspective of even one juror? Because even one juror would have been enough at least to hang. And so is the way we look at it to say we apply the Chapman standard with the burden on the defendant instead of the government? Let's posit that that's the case. And then would we look at it from the perspective of whether you have the reasonable possibility slash beyond reasonable doubt part of Chapman satisfied as to one juror? I'm answering this off the top of my head. I can't honestly say that this is something that I've given thought to. Ordinarily in most cases, you're talking about a different verdict as opposed to a juror hanging the rest of the jury. But I don't have anything more to offer the court on that point. If there are no further questions, we'd ask that the judgment be affirmed. Thank you. We'll give you your two minutes that you asked for. First, to answer the court's question. Yes, we would look at this question from the perspective of one juror. Because that is an effect on the jury. If one juror was moved from a position of guilty to undecided, that is an effect on the jury. And it counts to the fact that you have 12 lay people who are looking at this evidence from different perspectives. And what would that one juror have thought here? Because your best case scenario is that the hair evidence was especially critical in putting the defendant and the victim together at the relevant time. But when one juror is looking at it, or the jury is looking at it, what's the alternate scenario? Well, the jury, you know, the wits argued that the government had not met its burden. And that is the alternate scenario. That the juror was not compelled to believe these two witnesses who were drug-addicted witnesses, who had motives to lie. They heard about a contaminated crime scene. They heard all these things. They wouldn't be compelled to accept the government's theory or the government's version. And that's what the one person would say. It's more than putting, the hair did more than just put them in the same place at the same time. It also allowed the government to argue, well, common sense will tell you. You know, is, do you get, does hair get on someone just, you know, through casual contact? Or is it through strangulation or standing over someone? And so it was very compelling evidence in that sense. And the one juror who was not compelled to accept the government's theory or to accept these flawed witnesses, or to accept, or, you know, their version that the paint had to get on Mr. Butler that day as opposed to three days prior when he was in the apartment while it was being painted. That's what that one juror could easily have done. So, I just wanted to circle back for a second on the question of whose burden. I think our case law is not entirely clear about that. And we're not really talking here about burden of proof in the sense of marshalling evidence. Is it, I mean, maybe it's a burden of persuasion. But it is the defendant's burden in this posture to persuade the court that the error is material, no? Or do you dispute that? And if so, how and why? Well, there are a couple things I would say about that. And first, it's my position that the burden here doesn't matter because we're not talking about marshalling evidence. There's an established record that the court is reviewing and asking, you know, is there any reasonable possibility or likelihood that this evidence affected the judgment of the jury? So, it's the rare case, and the Supreme Court has said this, it's the rare case in which even the burden issue comes into play. This is not that rare case with the strong evidence in this circumstantial case. But our position is also that, yes, the government does bear the burden of showing that the false evidence did not harm the outcome of this case. And that's as it should be. I'm sorry, why? Because I thought we're in agreement that the appropriate way of thinking about the question whether any of this matters is under the rubric of materiality as opposed to harmless error. And the black letter law is the defendant challenger has to prove materiality. The government would have to prove harmless error. And our position is that because NAPU is equal to Chapman, it's the beneficiary of the error that bears the burden. And in this case, that would certainly be the government. I mean, it's equal to Chapman to the extent you think words like possibility are synonymous with words like likelihood. But I don't know of any case where we've said the materiality inquiry under NAPU is converted into a harmless error inquiry through Chapman. I mean, we've said time and again it's a materiality question. Well, certainly it's our position that the NAPU standard the burden under NAPU is the same as it would be under Chapman. And that's for good reason because once the trial process has been corrupted it makes little sense to have the person who's been affected by that, the individual who's been convicted, be the person who has to bear the burden of showing I mean, it may not matter much, right? It would matter if the case is in perfect equipoise which is a rare case. And it would matter if one side or the other fails to raise the issue. And we certainly don't have the second of those. Exactly. And that's our primary position that in this case it just simply doesn't matter. And for equipoise purposes it would have to be in perfect equipoise on whether the Chapman standard is met. The materiality. The materiality Chapman analog standard is met. You'd have to be in equipoise on that. And at that point the burden would matter. Right. And that is not this case. In this case where false forensic evidence was used to go to the only contested issue, it's clear that we cannot be comfortable that a jury did not rely on this evidence. Thank you. Because the false testimony was not harmless I ask the court to reverse the order of the district court. Thank you. Thank you counsel. The case is submitted.
judges: Srinivasan, Pillard, Katsas